## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF WEST VIRGINIA
## WHEELING

**AARON BIRTCHER, *individually and on behalf of all others similarly situated*,**

      Plaintiff,

v.                                                       Civil Action No. 5:13-CV-46
                                                              (BAILEY)

**CONSOLIDATED COAL COMPANY,**
***a corporation*,**

      Defendant.

## ORDER GRANTING PLAINTIFF'S
## MOTION TO REMAND

On this day, the above-styled matter came before this Court for consideration of Plaintiff's Motion to Remand [Doc. 5], filed on April 19, 2013.  The defendant filed its Response in Opposition to Plaintiff's Motion to Remand [Doc. 8] on May 7, 2013.  The plaintiff filed his Reply in Support of Motion For Remand [Doc. 11] on May 10, 2013. This Court, having reviewed the motion and the memoranda submitted with regard thereto, finds that the plaintiff's Motion to Remand [Doc. 5] should be **GRANTED** for the following reasons.

### I.  Background

On August 9, 2012, the plaintiff filed a class action Complaint in the Circuit Court of Marshall County, West Virginia [Doc. 1-1].  In the Complaint, the plaintiff brings a claim on behalf of himself and a class of "persons (a) employed at Defendant's West Virginia facilities between 2007 and 2012, and (b) who were discharged by the Defendant, and

1

(c) to whom Defendant did not pay their wages and benefits, in full, in a timely manner following their discharges, as required by the West Virginia Wage Payment and Collection Act" [*Id.* at 3].

On March 28, 2013, the defendants filed a Notice of Removal [Doc. 1] with this Court. In the Notice of Removal, the defendant states that removal is proper because the case presents a federal question under Section 301 of the Labor-Management Relations Act ("LMRA") [*Id.* at 2]. In addition, the defendant states that the Notice of Removal was timely filed because the defendant first became aware of this fact on March 18, 2013 [*Id.* at 1-2].

On April 19, 2013, the plaintiff filed his motion to remand [Doc. 5]. In the motion to remand, the plaintiff argues that the defendant's Notice of Removal was not timely filed [*Id.* at 2-5]. In addition, the plaintiff claims that he never alleged a cause of action relating to the LMRA [*Id.* at 6-9]. As a final matter, the plaintiff contends that attorney fees and expenses incurred as a result of the removal should be awarded to the plaintiffs [*Id.* at 10].

On May 7, 2013, the defendant filed a Response in Opposition to the Plaintiff's Motion for Remand [Doc. 8], alleging that it was not clear at the time that the Complaint was filed that the case was relevant to union employees because the named class representative was not a union employee [*Id.* at 4-5]. The defendant argues that it was only when the plaintiffs filed a Motion to Compel certain discovery responses that it became clear that the class included union employees [*Id.* at 5-7]. The defendant further argues that because the class includes union employees, the resolution of the case requires interpretation of certain terms of the collective bargaining agreement to determine when such employees were effectively discharged and the amount of wages and benefits due

to such employees upon discharge [*Id.* at 7-14].  As a final matter, the defendant argues that, in the event that this Court determines that remand is appropriate, the award of fees and expenses would not be proper because removal was not "directly contrary to well-settled authority" [*Id.* at 14-15].

On May 10, 2013, the plaintiff filed his Reply in Support of Motion For Remand [Doc. 11].  In his reply, the plaintiff argues that, even if the Complaint was not clear that the case pertained to union and non-union employees, a letter dated January 11, 2013, notified the defendant that the class included both categories of employees [*Id.* at 1-2].  The plaintiff further argues that the West Virginia Wage Payment Collection Act ("WPCA") claims are not preempted by the LMRA because "[t]he classification of a discharge, and when the discharge is effective, are determinations which have previously been made by the Defendant" and the case does not "argu[e] the correctness or justification of final wages," just the timing of such payment [*Id.* at 2-4].  In addition, the plaintiff reiterates his request for attorney fees and costs [*Id.* at 4].

## II.  Applicable Standard

### A.  Removal to Federal Court

A defendant may remove a civil action brought in a state court that could have been originally filed in federal court "to the district court of the United States for the district and division embracing the place where such action is pending".  28 U.S.C. § 1441(a); **Yarnevic v. Brink's, Inc.**, 102 F.3d 753, 754 (4th Cir. 1996).  "The notice of removal . . . shall be filed within 30 days after the receipt by the defendant . . . of a copy of the initial pleading . . . ."  28 U.S.C. § 1446(b)(1); **Yarnevic**, 102 F.3d at 755.  However, "if the case

stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3).

### B. Preemption

"Under the well-pleaded complaint rule, 'federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.' **Caterpillar Inc. v. Williams**, 482 U.S. 386, 392 (1987). Accordingly, federal question jurisdiction may not rest on the assertion of a federal defense, including the defense of preemption. *Id.* at 393. Rather, federal district courts have jurisdiction over 'only those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.' **Interstate Petroleum Corp. v. Morgan**, 249 F .3d 215, 219 (4th Cir. 2001) (quoting **Franchise Tax Bd. v. Const. Laborers Vacation Trust**, 463 U.S. 1, 27 (1983))." **Byard v. Verizon West Virginia, Inc.**, 2012 WL 1085775, *2 (N.D.W.Va. Mar. 30, 2012).

"A corollary to the well-pleaded complaint rule is the 'complete preemption doctrine.' Under this doctrine, a complaint 'can be recharacterized as one "arising under" federal law if the law governing the complaint is exclusively federal.' **Vaden v. Discover Bank**, 556 U.S. 49, 50 (2009) (citing **Beneficial Nat. Bank v. Anderson**, 539 U.S. 1, 8 (2003)). This doctrine will apply to a claim when 'the pre-emptive force of a statute is so "extraordinary" that it "converts an ordinary state common law complaint into one stating a federal claim

4

for purposes of the well-pleaded complaint rule.'" ***Caterpillar***, 482 U.S. at 393 (quoting ***Metro. Life Ins. Co. v. Taylor***, 481 U.S. 58, 65 (1987)). The completely preempted state claim will thus be considered, 'from its inception, a federal claim,' and consequently 'arises under' federal law. ***Caterpillar***, 482 U.S. at 393 (citing ***Franchise Tax Bd.***, 463 U.S. at 24)." ***Id***.

In order to demonstrate complete preemption, a defendant must show that "the plaintiff has a 'discernible federal [claim]' and that 'Congress intended [the federal claim] to be the exclusive remedy for the alleged wrong.'" ***Pinney v. Nokia, Inc.***, 402 F.3d 430, 449 (4th Cir. 2005) (alteration in original) (quoting ***King v. Marriott Int'l***, 337 F.3d 421, 425 (4th Cir. 2003)). Here, the defendant argues that the plaintiff's claims are completely preempted by § 301 of the LMRA, 29 U.S.C. § 185, a statute in which the Supreme Court has found a congressional intent to create an exclusively federal remedy. *See* ***Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists***, 390 U.S. 557, 560 (1968).

Section 301 of the LMRA provides in pertinent part:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).

"This statute creates 'a body of federal common law' in order to secure uniform

interpretation of labor contracts and 'promot[e] the peaceable, consistent resolution of labor-management disputes.' *McCormick v. AT&T Tech., Inc.,* 934 F.2d 531, 534, 537 (4th Cir. 1991) (quoting *Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 404 (1988))." *Byard*, 2012 WL 1085775 at *3.

"Even though the preemptive effect of § 301 'is so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization,' *Franchise Tax Bd.,* 463 U.S. at 23, 'the bare fact that a collective bargaining agreement will be consulted in the course of state-law litigation plainly does not require [preemption].' *Livadas v. Bradshaw,* 512 U.S. 107, 124 (1994). Instead, a state law claim will be completely preempted by § 301 only if resolution of the claim 'requires the interpretation of a collective-bargaining agreement,' *Lingle,* 486 U.S. at 413, or if the claim is 'inextricably intertwined with consideration of the terms of the labor contract.' *Allis-Chalmers Corp. v. Lueck,* 471 U.S. 202, 213 (1985)." *Id*.

### III. Discussion

#### A. Timeliness of the Notice of Appeal

##### i. Relevant Information from State Court Proceeding

On August 9, 2012, the plaintiff filed a Complaint [Doc. 1-1] alleging a class action suit for alleged violations of the WPCA [*Id.* at 2]. In the Complaint, the plaintiff defines the class as "those persons (a) employed at Defendant's West Virginia facilities between 2007 at 2012, and (b) who were discharged by the Defendant, and (c) to whom Defendant did not pay their wages and benefits, in full, in a timely manner following their discharges, as required by the [WPCA]" [*Id.* at 3].

During the course of discovery, the defendant provided its Response to Plaintiff's First Set of Requests for Admission, Interrogatories, and Requests for Production of Documents on December 28, 2012 [Doc. 5-3]. In its response, the defendant objected to the plaintiff's requests for information pertaining to the termination of other employees and the final payments of wages to those individuals to the extent that such requests included information regarding hourly employees who were members of the United Mine Workers of America [*Id.* at 2-7, 9]. In making this objection, the defendant stated that such individuals are not similarly-situated to the class representative in this proceeding, who was a salaried employee [*Id.*].

On January 11, 2013, counsel for the plaintiff sent a letter to counsel for the defendant in reply to the discovery response [Doc. 5-4]. In this letter, counsel for the plaintiff stated the following:

> The Plaintiff contends the responses [to the Plaintiff's first set of discovery requests] should not be limited to salaried employees, but should include all employees, salary, or hourly. The fact that someone is in the [United Mine Workers of America] and subject to their collective bargaining agreement does not change their right to timely receive a final paycheck. The statute refers to all employees, and contains several provisions referencing union/labor situations, which certainly indicates union employees were not overlooked or excepted from protection under the statute. If any employee, hourly or salary, is terminated, per the statute that employee is entitled to be paid within 72 hours. The commonality is termination and not being paid on time - which has nothing to do with the collective bargaining agreement or a salary versus hourly consideration. Additionally, any attempt to exempt an employee from the protections of the WPCA is expressly prohibited under the law.
> If you are aware of some law that exempts union employees from their rights under the WPCA, please advise. Otherwise, please respond to the discovery as to all employees, salary and hourly.

[*Id.* at 1].

On January 22, 2013, counsel for the defendant sent a letter to counsel for the

plaintiff in response to the January 11, 2013, letter [Doc. 5-5]. In this letter, counsel for the defendant stated the following:

> I write in response to your letter of January 11, 2013. You state in your letter that you believe that Plaintiff is entitled to discovery with regard to those employees who are members of the United Mine Workers of America. As you know, Mr. Birtcher, as a salaried employee, is not a United Mine Worker member, and is not governed by the National Bituminous Coal Wage Agreement in his employment with Consolidation Coal Company. If you represent a putative class member who is a member of the United Mine Workers of America and you were to add that employee as a class representative then, perhaps, arguably there may be an issue with regard to the discovery you seek. However, I do not believe that Aaron Birtcher, as a salaried employee, can fairly and adequately represent a class of hourly employees. Moreover, Mr. Birtcher's status as a class representative does not meet the remaining requirements of Rule 23.

[*Id.* at 1].

On March 15, 2013, the plaintiff filed a Motion to Compel the requested discovery responses [Doc. 11-1]. In the Motion to Compel, the plaintiff stated that "[t]he issue is whether the 72 hour rule of the [WPCA] applied to all employees, salary and hourly, or can the Defendant limits its discovery responses to just salaried employees since Mr. Birtcher was a salaried employee" [*Id.* at 1]. In addition, the plaintiff stated he filed his WPCA claim as a class action and, therefore, "is representing other 'employees' who were discharged by the Defendant and not paid in full in 72 hours. The Defendant wants to limit the definition of employee to only salaried employees, since Mr. Birtcher was a salaried employee. Obviously, the Defendant has fewer salaried employees than hourly employees, and such a restriction unfairly narrows the potential class. To date, the Defendant has only supplied discovery regarding salaried employees" [*Id.* at 2]. The plaintiff further stated that "[his] interest is to include any employee who was discharged and not timely paid for their final wages. The Defendant indicated in correspondence that if a union employee was

added as a class representative, then 'perhaps' there would be cause for discovery. However, such an argument presents the Plaintiff with an impossible dilemma - he can't name an hourly, union class representative, if the Defendant won't release the name of such individuals" [*Id.* at 2].

### ii. Analysis

The defendant argues that the March 28, 2013, Notice of Removal [Doc. 1] is timely because the defendant did not become aware that the plaintiff intended to include union employees in the class definition[1] until the plaintiff's March 15, 2013, Motion to Compel[2] [Doc. 1 at 1-2; Doc. 8 at 3, 5-7]. The defendant argues that the correspondence preceding the Motion to Compel merely made the defendant "wonder whether Plaintiff Birtcher intended for the class to include union employees of Defendant or only non-union employees like himself" [*Id.* at 7]. The defendant argues that he received "unequivocally clear and certain notice of Plaintiff's intent to pursue claims on behalf of union members subject to the National Bituminous Coal Wage Agreement" only when the plaintiff filed the Motion to Compel [*Id.*].

Even if this Court were to determine that the plaintiff's original pleading did not provide notice to the defendant that the plaintiff intended to include union employees in his defined class, the plaintiff's January 11, 2013, letter does provide such notice; as such, the

---

[1]The defendant argues that the inclusion of union employees means that this case is removable "based on the doctrine of complete preemption under Section 301 [LMRA]" because a claim including union employees requires the interpretation of a collective bargaining agreement [Doc. 1 at 1-2; Doc. 8 at 10-14].

[2]The defendant states in its Notice of Removal that it received the plaintiff's March 15, 2013, Motion to Remand on March 18, 2013 [Doc. 1 at 1].

9

defendant's March 28, 2013, Notice of Removal was not filed within the thirty-day deadline. The January 11, 2013, letter specifically stated that "[t]he fact that someone is in the [United Mine Workers of America] and subject to their collective bargaining agreement does not change their right to timely receive a final paycheck" [Doc. 5-4 at 1]. The defendant argues that, despite a reference to the United Mine Workers of America and a collective bargaining agreement, this language does not provide "unequivocally clear and certain" notice that the class definition includes union employees [Doc. 8 at 6]. In addition, the defendant argues that "nowhere within [the January 11, 2013, letter] did Plaintiff express an intention to either serve as the class representative for . . . union employees or to assert claims on their behalf in this case" [Doc. 8 at 6]. However, this Court notes that in response to the defendant's argument that the plaintiff is not similarly-situated to hourly union employees, the January 11, 2013, letter stated that "[t]he commonality is termination and not being paid on time - which has nothing to do with the collective bargaining agreement or a salary versus hourly consideration" [*Id.*]. As such, the January 11, 2013, letter notifies the defendant that the plaintiff intends to include hourly/union employees in the class.

The defendant further argues that "the response prepared by Defendant's counsel dated January 22, 2013, makes clear that the January 11, 2013[,] letter was insufficient to provide adequate notice of removability on grounds of LMRA preemption" [Doc. 8 at 7]. However, counsel for the defendant specifically stated in the letter that "[he] do[es] not believe that Aaron Birtcher, as a salaried employee, can fairly and adequately represent a class of hourly employees" [Doc. 5-5 at 1]. There would be no need for counsel to present this opinion in his January 22, 2013, letter if he were not on notice that the plaintiff intended to include in the class hourly union employees who were terminated during the

10

relevant time period.

Furthermore, the March 15, 2013, Motion to Compel presents the same arguments to the Circuit Court of Marshall County, West Virginia, that were presented to counsel for the defendant in the January 11, 2013, letter. Although the arguments in the Motion to Compel are more substantive than those provided in the January 11, 2013, letter, they provide the same general argument that the WPCA does not exclude union or hourly employees and the defined class includes these types of former employees. As such, the March 15, 2013, Motion to Compel does not provide new information that suddenly put the defendant on notice that the plaintiff intended to include union employees in his defined class. As such, this Court finds the defendant's March 28, 2013, Notice of Removal [Doc. 1] to be untimely. Because the Notice of Removal [Doc. 1] was not timely filed, this Court hereby **GRANTS** Plaintiff's Motion to Remand **[Doc. 5]**.

### B. LMRA Preemption

This Court further notes that even if the Notice of Removal had been timely filed, this Court would still be required to grant Plaintiff's Motion to Remand [Doc. 5] because it lacks federal question jurisdiction over this proceeding. In this WPCA case, the defendants argue that federal question jurisdiction exists if union employees are included in the class because the termination dates and total amount of wages relevant to these employees require an interpretation of the collective bargaining agreement and, therefore, is preempted by the LMRA [Doc. 8 at 7-14].

"[Section] 301 cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law." ***Livadas v. Bradshaw***, 512 U.S. 107,

11

123 (1994) (internal citations omitted); *see also* **Price v. Goals Coal Company**, 1998 WL 536371, *6 (4th Cir. Aug. 13, 1998) *(*internal citations omitted). In determining whether a claim is preempted by section 301, a court must examine whether the claim "is inextricably intertwined with or requires interpretation of the collective bargaining agreement" ***Id.*** (relying on **Allis-Chalmers Corp.**, 471 U.S. at 213; **Lingle**, 486 U.S. at 413; and **McCormick**, 934 F.2d at 535). Section 301 does not preempt a claim where "the meaning of contract terms is not the subject of dispute." **Livadas**, 512 U.S. at 124.

In this case, the plaintiff's claim neither requires an interpretation of the collective bargaining agreement nor is inextricably intertwined with the collective bargaining agreement. The defendant argues that the inclusion of former union employees requires this Court to consult the collective bargaining agreement to determine the termination date of union employees and the final wages that these employees were owed [Doc. 8 at 10-14]; however, the mere consultation to a collective bargaining agreement is not the same as the interpretation of the collective bargaining agreement. *See* **Livadas**, 512 U.S. at 124, n.18. Moreover, the calculation of damages for any late payments will be based upon the defendant's employment records, which will indicate the termination date of its employees, the final wages paid to each employee, and the date that each employee received those final wages. *See* **Stump v. Cyprus Kanawha Corp.**, 919 F.Supp. 221, 225 (S.D.W.Va. 1995) (finding a WPCA claim to not be preempted under Section 301 the LMRA where the mere consultation to the National Bituminous Coal Wage Agreement was required to determine the wages owed and the calculation of damages "[was] based more upon the employer's books"). In the Complaint, the plaintiff merely seeks damages for those

individuals who were not timely paid their final wages pursuant to the WPCA according to the company's records; the plaintiff does not dispute the termination dates or final wages owed previously determined by the defendant [Doc. 1-1 at 2-7; Doc. 11 at 3].[3] *See* **Kline v. Security Guards, Inc.**, 386 F.3d 246, 262 (3rd Cir. 2004) (finding that Section 301 of the LMRA did not preempt a claim that "[was] not based on any right or duty created by the collective bargaining agreement"). Accordingly, even if the class includes former union employees, the plaintiff's class action claim for alleged violations of the WPCA is not preempted by section 301 of the LMRA. As such, even if the defendant's Notice of Removal had been filed timely, this Court would not have federal question jurisdiction over this proceeding and would GRANT the Plaintiff's Motion to Remand [Doc. 5] on that basis.

### IV. Conclusion

For the foregoing reasons, the Plaintiff's Motion For Remand **[Doc. 5]** is hereby **GRANTED**. Accordingly, this case is **REMANDED** to the Circuit Court of Marshall County, West Virginia.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to counsel of record herein.

---

[3] As such, this case is distinguishable from WPCA claims that involve a dispute regarding the amount of the final payment of wages. *See* **Byard v. Verizon West Virginia, Inc.**, 2012 WL 1085775, *2 (N.D.W.Va. Mar. 30, 2012) (finding that the plaintiff's WPCA claim was preempted by Section 301 of the LMRA because the claim pertained to whether the final wages amount should include preliminary and post-liminary work); *see also* **Ellison v. UPS, Inc.**, 2012 WL 6026490, *4 (S.D.W.Va. Dec. 4, 2012) (finding that the plaintiff's WPCA claim based upon a disputed rate of pay and schedule was preempted by Section 301 of the LMRA because the claim required interpretation of the collective bargaining agreement).

**DATED:** May 24, 2013.

/s/ John Preston Bailey
JOHN PRESTON BAILEY
CHIEF UNITED STATES DISTRICT JUDGE